ace

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                              )<br>        Plaintiff,            )<br>                              )<br>vs.                           )<br>                              )   Case No. 06-40122<br>ANGEL ANTONIO PAGAN,          )<br>                              )<br>        Defendant.            )<br>_____) | |

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION TO SUPPRESS STATEMENT

This matter comes before the Court on defendant Angel Antonio Pagan's Motion to Suppress Statement (Doc. 16). Defendant moves to suppress statements made to law enforcement subsequent to his arrest on June 9, 2006. The Court held a hearing on defendant's motion on January 9, 2007. After reviewing the parties' filings and the evidence adduced at the hearing, the Court is now prepared to rule. For the reasons stated below, defendant's motion to suppress is granted.

### *Factual Background*

After defendant was arrested on June 9, 2006, he was taken to the Geary County Police Department where he was placed in an interview room and interrogated by Captain Timothy Brown. The interview was videotaped, and a DVD recording of the interview, along with a transcript, was admitted into evidence at the January 9, 2007 hearing.[1]  Captain Brown began the

---

[1]The DVD recording was admitted as Ex. 400; the transcript was admitted as Ex. 401.

interview by advising defendant of his constitutional rights as required under *Miranda v. Arizona*.[2]  Captain Brown gave defendant a waiver form and asked him to read and initial it. Upon hearing his rights, defendant responded, "I would like to have a lawyer with me in a case like this because I want somebody to remember what's being said here."[3]  Captain Brown told him that was fine, and recognized that defendant had invoked his rights by stating, "You just said the magic, 'A' word."[4]  Then Captain Brown advised defendant of the charges for which he was under arrest.  Defendant protested, and Captain Brown again acknowledged that defendant had invoked his right to counsel, by stating that he already said the "A" word.  Defendant reiterated that he did not want to talk to Captain Brown.[5]  Captain Brown again told defendant that, "You said the 'A' word," and then defendant stated, "I'll talk to you.  I don't want to do that."[6]  Captain Brown again stated that defendant had invoked his right to counsel, and defendant stated, "I'll talk to you, Captain."[7]

       Then Captain Brown started telling defendant about the information that he had gathered regarding defendant's involvement in the suspected criminal activity, including evidence that he had obtained that incriminated defendant.  After some discussion, Captain Brown brought up defendant's previous statement that he wanted an attorney.  Defendant responded, "No.  I want

---

[2] 384 U.S. 436 (1966).

[3] Ex. 401 at 3.

[4] *Id.*

[5] *Id.* at 4.

[6] *Id.*

[7] *Id.*

to talk to you though, man, 'cause you've been straight."[8]  Captain Brown replied, "So you're willing to waive your right to an attorney now?  Am I correct?  You're willing to tell me right now you don't want an attorney; is that what you're saying?"[9]  Defendant did not an answer this question, but instead continued talking to Captain Brown about the suspected criminal activity.  Finally, Captain Brown asked, "Do you want to talk or not?"[10]  Defendant replied, "No.  I'll go to—I'll go to court for this."[11]

At that point, Captain Brown attempted to leave the room and told defendant that he would be right back.  Defendant called for Captain Brown, who stood at the doorway of the room, and they continued their discussion.  Captain Brown specifically asked defendant, presumably in reference to the counterfeit bills that defendant is charged with possessing, "Where'd you get the money?"[12]  After Captain Brown stated that he had heard that defendant obtained the counterfeit money from the man that bought defendant's car, Captain Brown asked, "how much did you sell your car for?"[13]  He also asked, "How did he pay you?" and "What kind of cash?"[14]

Then Captain Brown again recognized defendant's invocation of his right to counsel by stating, "I can't even talk to you.  Okay?  You've already said you want an attorney.  Unless you

---

[8]*Id.* at 8.

[9]*Id.* at 9.

[10]*Id.* at 10.

[11]*Id.*

[12]*Id.* at 10–11.

[13]*Id.* at 15.

[14]*Id.* at 15–16.

are willing to sign this form, we can't even talk. So that's the bottom line."[15] Captain Brown then left the room for several minutes. When he returned, he handcuffed the defendant and started to lead him out of the room. Defendant tried to speak, and Captain Brown said, "No. You got something to say, go ahead and tell me right now."[16] Defendant told him that he would like to talk to Captain Brown one day, "out of here."[17] Defendant twice stated later in the interview that he wanted to talk to Captain Brown.[18] But when asked by Captain Brown later in the interrogation if defendant was willing to talk to him, defendant stated, "I can't man. I don't want to be involved in this shit, man."[19] After further discussion, Captain Brown told defendant, "Either you tell me at this particular time that you want to—that you want to talk with me and waive your right to an attorney, or you're going to jail right now. What is it?"[20] Defendant responded that he would talk to Captain Brown. Captain Brown replied, "I'm not forcing you. You have the right not to talk. Do you understand that?"[21] Defendant verbally acknowledged his right.

Captain Brown then left the room for several minutes. When he returned, he attempted to start the interview over again. Captain Brown told defendant to initial and sign the waiver form. Defendant began initialing the document, but he did not sign the waiver form. Captain Brown

---

[15]*Id.* at 16.

[16]*Id.* at 17.

[17]*Id.* at 17.

[18]*Id.* at 18.

[19]*Id.* at 23.

[20]*Id.* at 25–26.

[21]*Id.* at 26.

repeatedly told defendant that the interview was over unless he signed the form.[22]  Defendant never signed the waiver form, and Captain Brown left the room.

### *Applicable Law*

When a defendant is subject to custodial interrogation, "the procedural protections of *Miranda* apply."[23]  After *Miranda* warnings are given, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."[24]  However, "an accused may be interrogated further if, after invoking the right to counsel, he voluntarily initiates further communication with the police and waives his right to counsel."[25]  Also, any statement made in subsequent interrogation must not be the result of coercive pressures.[26]

A defendant's invocation of *Miranda* rights must not be "ambiguous or equivocal."[27]  The determination as to "whether a suspect has invoked his right to counsel 'is an objective inquiry.'"[28]  "The question is whether the suspect's statement is 'sufficiently clear that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'"[29]

---

[22]*Id.* at 30–32.

[23]*United States v. Rambo*, 365 F.3d 906, 910 (10th Cir. 2004).

[24]*Miranda v. Arizona*, 384 U.S. 436, 473–74 (1966).

[25]*Clayton v. Gibson*, 199 F.3d 1162, 1172 (10th Cir. 1999) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)).

[26]*Minnick v. Minnesota*, 498 U.S. 146, 151 (1990).

[27]*Davis v. United States*, 512 U.S. 452, 459 (1994).

[28]*United States v. Nelson*, 450 F.3d 1201, 1212 (10th Cir. 2006) (quoting *Davis*, 512 U.S. at 459).

[29]*Id.* (quoting *Davis*, 512 U.S. at 459).

*Analysis*

In this case, the government agrees that defendant unequivocally invoked his right to counsel at the beginning of the interview,[30] when he said, "I would like to have a lawyer with me in a case like this because I want somebody to remember what's being said here."[31]  But the government contends that defendant then waived the right by changing his mind almost immediately and agreeing to talk to Captain Brown without an attorney.

However, under *Miranda*, once defendant invokes his right to an attorney, the interrogation must cease.  In this case, defendant did not reinitiate the communication with law enforcement.  Instead, Captain Brown continued his discussion by describing the charges for which defendant was being held.  In *United States v. Rambo*,[32] when a defendant invoked his right to silence, the officer acknowledged defendant's request but then told him that he would be charged with two aggravated robberies and that other agencies would want to speak with the defendant.[33]  In that case, the Tenth Circuit found that the officer's comments "reflect[ed] both further pressure on [defendant] to discuss the crimes and a suggestion that despite [defendant's] present request to terminate discussion of the topic, he would be questioned further."[34]  Thus, the court in that case held that because there was no break in the interrogation, the officer failed to scrupulously honor defendant's right to remain silent and ordered suppression.[35]

---

[30](Doc. 18 at 2).

[31]Ex. 401 at 3.

[32]365 F.3d 906 (10th Cir. 2004).

[33]*Id.* at 911.

[34]*Id.*

[35]*Id.* (citing *Michigan v. Mosley*, 423 U.S. 96, 103 (1975)).

Similarly, in this case, the Court finds that defendant's request for counsel was not scrupulously honored.  Defendant invoked his right to counsel, and he did not subsequently waive the right by voluntarily initiating further communication.  In fact, without a break in the interrogation, defendant had no opportunity to reinitiate communication.  As soon as defendant asked for an attorney, Captain Brown started listing the charges against defendant.  When defendant protested, Captain Brown repeatedly told defendant that he said the "A" word until defendant eventually said that he would talk to Captain Brown.  Then Captain Brown started listing all of the evidence that he had obtained against defendant, which Captain Brown should have known was "likely to elicit an incriminating response."[36]

Therefore, the Court finds that Captain Brown's statements to defendant, specifically his naming the charges against defendant, along with Captain Brown's failure to promptly end the interview, show that Captain Brown pressured defendant into speaking to him.  In so doing, Captain Brown violated the defendant's rights.  To the extent the defendant later equivocated, that is of no consequence, because any subsequent statements were the product of Captain Brown's continued interrogation after the defendant unequivocally invoked his right to counsel at the beginning of the interview.  Accordingly, the Court orders suppression of all statements made by defendant after he initially invoked his right to counsel.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Suppress (Doc. 16) is **GRANTED.**

**IT IS SO ORDERED**.

Dated this 21st day of February 2007.

---

[36]*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

  S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

Memorandum and Order Granting Defendant's Motion to Suppress Statement, *United States v. Pagen*, 06-40122